**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**JOE HAND PROMOTIONS, INC.,**

**Plaintiff,**

**v.**

**RAMISH KADEL, et al.,**

**Defendants.**

**Case No. 1:25-cv-813**

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

Plaintiff Joe Hand Promotions, Inc., sued Defendants Star Lounge & Bar, LLC, Ramish Kadel, and Arjun Kadel, under provisions of the Communications Act of 1934 and the Cable and Television Consumer Protection and Competition Act of 1992 (the Cable Act) for unlawfully displaying a 2024 Ultimate Fighting Championship (UFC) event to which Joe Hand had purchased the exclusive national commercial distribution rights. (Compl., Doc. 1, #5). Despite being served, none of the defendants appeared. So Joe Hand sought and received entries of default from the Clerk's Office. (Docs. 11, 12, 15, 16). Joe Hand now moves for default judgment against all three defendants. For the reasons discussed below, the Court **GRANTS** the Motion for Default Judgment (Doc. 18), but it does not award the amount of damages Plaintiff requests ($31,752). Instead, the Court enters judgment for $5,037.

## BACKGROUND[1]

Plaintiff Joe Hand Promotions, Inc., is an international sports and entertainment programming distributor. (Doc. 1, #5). Relevant to this case, it purchased the exclusive national commercial distribution rights to the UFC Championship Fight (the Fight) that aired on February 17, 2024. (*Id.* at #5). It then sublicensed to commercial establishments like bars, restaurants, and hotels, allowing them to publicly display the Fight. (*Id.*). It bases its sublicensing rates on the commercial establishment's maximum building occupancy. (Rate Card, Doc. 18-3, #71). More potential patrons means a higher fee. (*Id.*). For example, in 2024, an establishment with a one-hundred-person maximum occupancy could expect to pay Joe Hand $1,095 for the right to show a UFC event. (*Id.*). Joe Hand encrypts their broadcasts so only those who have a sublicensing agreement can access the content. (Pl.'s Decl., Doc. 18-2, #67).

To police signal piracy, Joe Hand employs private investigators who go into establishments the company suspects are decrypting their broadcasts and showing the contents to patrons without proper authorization. (*Id.* at #66; Otto Decl., Doc. 18-4, #72). The investigators confirm that the establishment is showing a Joe Hand program without a sublicensing agreement and take notes about the program shown, the number of screens, the number of patrons present, the maximum building

[1] When considering a motion for a default judgment, the Court accepts as true all well-pleaded allegations except those relating to the amount of damages. *Beaver v. Eastland Mall Holdings, LLC*, No. 2:20-cv-485, 2021 WL 1084610, at *2 (S.D. Ohio Mar. 22, 2021). Accordingly, the Court's summary of the factual background rests on the allegations in Plaintiff's Complaint (Doc. 1).

occupancy, and whether the establishment charged a cover fee. (Doc. 18-2, #66; Doc. 18-4, #72–73).

Defendant Star Lounge & Bar, LLC, is a small commercial establishment in West Chester Township, Ohio, owned and operated by Defendants Ramish Kadel and Arjun Kadel. (Doc. 1, #3). They did not have a sublicensing agreement with Joe Hand to show the Fight. (*Id.* at #5). Undeterred by their lack of licensure, though, Star Lounge posted the fight poster on its Facebook page and encouraged patrons to "[c]ome join us for UFC fight night PPV, Sat, feb 17." (Doc. 18-5, #74). Defendant Arjun Kadel shared that post in the local neighborhood Facebook group. (Doc. 18-7, #76). When fight day came, Star Lounge made good on its promise and displayed the program on three screens albeit to a meager crowd of three people, (Doc. 18-4, #72). It did not charge a cover fee. (*Id.*). Unfortunately for Defendants, a Joe Hand investigator—Nicole Otto—was present for part of the Fight and took note of Star Lounge's unauthorized display. (*Id.*).[2]

Seeking compensation for this act of video piracy, Joe Hand sued Defendants for unauthorized publication or use of communications under the Communications Act of 1934, 47 U.S.C. § 605(a), and for unauthorized reception of cable service under

---

[2] Ms. Otto watched the first three rounds of the undercard fight between Geoff Neal and Ian Machado Garry and the first round of the undercard fight between Robert Whittaker and Paulo Costa. (Doc. 18-4, #72). She apparently did not stay for the main bout between Alexander Volkanovski and Ilia Topuria. (*See id.*); *UFC 298: Volkanovski vs. Topuria*, ESPN (Feb. 17, 2024), https://www.espn.com/mma/fightcenter/_/id/600039753/league/ufc [https://perma.cc/WQ35-Q6T3]. For those who care, Topuria KO'd Volkanovski in the second round to become the UFC Featherweight Champion. *UFC 298: Volkanovski vs. Topuria*, *supra*.

the Cable Act, 47 U.S.C. § 553(a). (Doc. 1, #1–2, 4, 6). Joe Hand properly served Star Lounge and Ramish Kadel on November 16, 2025. (Affs. of Service, Docs. 7, 8). Service on Arjun Kadel initially failed, (Doc. 10), so Joe Hand arranged for service by ordinary mail on January 20, 2026, as Southern District of Ohio Civil Rule 4.2 and Ohio Civ. R. 4.6(D) allow, (Doc. 13).

Once served, none of the defendants answered or otherwise pleaded before the deadline to do so lapsed. Joe Hand then applied for and received entries of default against all defendants. (Docs. 11, 12, 15, 16). Ramish Kadel eventually filed an answer, (Doc. 14), but the Court struck it as untimely and instructed Ramish that he must seek relief from the entry of default or leave to file his answer out of time, (4/6/2026 Not. Order). Two months passed without a peep from any of the defendants—Ramish included—and Joe Hand moved for default judgment. (Doc. 18.). There, Joe Hand provides an affidavit from its president, Joe Hand, Jr., the company's rate schedule for 2024, an affidavit from investigator Nicole Otto, several screenshots from Facebook, and an affidavit from Joe Hand's counsel laying out his attorney fees and costs. (Docs. 18-2 to -8).

With that, the matter is ripe for review.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides a two-step process for default judgments. A plaintiff seeking entry of default against a defendant must first show, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Upon such showing, the clerk must enter default. *Id.*

And at that point, the complaint's factual allegations concerning liability, but not damages, are taken as true. *Beaver*, 2021 WL 1084610, at *2; *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Next, unless the claim "is for a sum certain or a sum that can be made certain by computation," the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b).

Before granting default judgment, a court must satisfy itself of two things. First, the court must verify that it has both subject-matter jurisdiction over the action and personal jurisdiction over any defendant against whom it grants a default judgment. *See Am. Clothing Express, Inc. v. Cloudflare, Inc.*, No. 2:20-cv-2007, 2022 WL 256337, at *1 (W.D. Tenn. Jan. 26, 2022). Second, the court must determine whether the facts in the complaint state a claim for relief against the defendant. *See Harrison v. Bailey*, 107 F.3d 870, 870 (6th Cir. 1997) (unpublished table decision) ("Default judgments would not have been proper due to the failure to state a claim against these defendants."). Said differently, to warrant default judgment, "the complaint must be able to survive a Rule 12(b)(6) motion to dismiss." *Buxton v. Hartin Asset Mgmt., LLC*, No. 1:22-cv-600, 2023 WL 4861724, at *6 (W.D. Mich. July 31, 2023) (quotation omitted).

After confirming there is jurisdiction and a plausible claim, a court then "must conduct an inquiry" to establish the appropriate damages. *Beaver*, 2021 WL 1084610, at *2 (citation modified). To do that, the court may either hold an evidentiary

hearing, Fed. R. Civ. P. 55(b)(2), or it may determine damages without a hearing "if the damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits," *Beaver*, 2021 WL 1084610, at *2 (citation modified).

**LAW AND ANALYSIS**

To begin, the Court concludes that Joe Hand has satisfied Federal Rule of Civil Procedure 55(a)'s requirement for a default. Defendants failed to plead or otherwise defend this action despite Joe Hand serving them. (Docs. 7, 8, 13). Knowing that a plaintiff can recover damages under either 47 U.S.C. § 605 or 47 U.S.C. § 553, not both, Joe Hand elects to pursue damages under § 605. (Doc. 18-1, #50); *see Joe Hand Promotions, Inc. v. RPM Mgmt. Co., LLC*, No. 2:09-cv-862, 2011 WL 1043574, at *3 (S.D. Ohio Mar. 18, 2011). It requests $10,000 in statutory damages, a $20,000 enhancement for defendants' allegedly willful Communications Act violation, $1,350 in attorneys' fees, and costs of $402. (Doc. 18, #48). That totals $31,752. For the reasons explained below, the Court concludes that Joe Hand is entitled to default judgment under § 605 but not in the full amount it requests.

**A. The Court Has Jurisdiction over this Matter.**

Jurisdiction does not pose an issue. Start with subject-matter jurisdiction. Joe Hand asserts claims under the Communications Act and the Cable Act, both of which are federal laws. (Doc. 1, #1–2, 4, 6). So this Court has federal-question jurisdiction over both claims. 28 U.S.C. § 1331. Personal jurisdiction is easy, too. Star Lounge is an Ohio corporation that does business in the Southern District of Ohio. (*Id.* at #3).

Ramish Kadel and Arjun Kadel are its managing members. (*Id.*). All are subject to the jurisdiction of an Ohio court of general jurisdiction. Fed. R. Civ. P. 4(k)(1)(A); *see also* Ohio Rev. Code Ann. § 2307.382(A)(1)–(3), (8) (West 2026). Thus, based on the well-pleaded allegations in the Complaint, the defendants are all "at home" in Ohio and subject to the Court's personal jurisdiction. *IHF Ltd. v. Myra Bag*, 391 F. Supp. 3d 760, 768 (N.D. Ohio 2019) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

**B. Plaintiff Plausibly Alleges that Defendants Are Liable.**

The Court turns next to whether the complaint sufficiently states a claim for relief against the defendants. Joe Hand elected to pursue damages under only the Communications Act, (Doc. 18-1, #50), so the Court need analyze only that claim. *See Joe Hand Promotions, Inc. v. Damene*, No. 3:23-cv-52, 2024 WL 181855, at *3 (S.D. Ohio Jan 17, 2026). The Court finds that Joe Hand pleads facts sufficient to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint's well-pleaded factual material must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**1. Star Lounge's Liability.**

The Communications Act makes it illegal to intercept radio communications without authorization. 47 U.S.C. § 605(a). Because there is no mens rea or scienter element for a violation of § 605, intent is immaterial to liability. *Joe Hand Promotions, Inc. v. Easterling*, No. 4:08-cv-1259, 2009 WL 1767579, at *4 (N.D. Ohio June 22, 2009).

Joe Hand pleads facts sufficient to establish Star Lounge's liability under 47 U.S.C. § 605(a). Joe Hand held exclusive commercial distribution rights to the Fight. (Doc. 1, #4–5).[3] Star Lounge did not have a sublicensing agreement or any other form of permission from Joe Hand to receive and display the Fight broadcast, which was "telecast via pay-per-view nationwide." (*Id.*). Despite its lack of authorization, Star Lounge intercepted, decoded, and displayed the Fight. (*Id.*). That is enough for Star Lounge to be liable under § 605.

**2. The Kadels' Liability.**

Individual liability is harder. A person is not individually liable for a business's Communications Act violation simply because they own the business. *J & J Sports*

---

[3] There appears to be a labeling error in the complaint. Joe Hand claimed to hold exclusive distribution rights to "[t]he UFC 285 Championship Fight on Saturday February 17, 2024." (Doc. 1, #5). But UFC 285 took place on March 4, 2023, nearly a year before the date listed in the complaint. *UFC 285: Jones vs. Gane*, ESPN (Mar. 4, 2023), https://www.espn.com/mma/fightcenter/_/id/600027449/league/ufc [https://perma.cc/A8SR-UPER]. Thus, the fight that Plaintiff predicates its claim on does not exist. Instead, an entirely different fight—UFC 298—took place on February 17, 2024. *UFC 298: Volkanovski vs. Topuria*, supra. However, because the Complaint repeatedly refers to the correct February date instead of the incorrect label, (Doc. 1, #3–4), and Joe Hand's later-filed documents quietly corrected the labeling mistake, (Doc. 18-2, #65; Doc. 18-4, #72), the Court draws the reasonable inference that Joe Hand asserts (and actually possessed) exclusive distribution rights to UFC 298.

*Prods., Inc., v. Fisher*, No. 1:12-cv-790, 2013 WL 4482405, at *3 (S.D. Ohio Aug. 20, 2013). Rather, the complaint must establish that the individual defendant had the right and ability to supervise the violations and an obvious and direct financial interest in the misconduct. *Id.*; *J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) (citing *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)). Put differently, the individual defendant must have authorized the underlying violation. *J & J Sports Prods., Inc. v. The Green Plantain, Ltd.*, No. 1:12-cv-337, 2013 WL 3322061, at *4 (S.D. Ohio July 1, 2013) (citing *291 Bar & Lounge*, 648 F. Supp. 2d at 473).

Joe Hand pleads facts sufficient to establish that the Kadels are individually liable. They alleged that the Kadels had the right and ability to supervise the activities of the Star Lounge employees, that they specifically directed their employees to intercept and display the fight, and that they had an obvious and direct financial interest in the misconduct. (Doc. 1, #3–4). Taking those well-pleaded factual allegations as true (as the Court must), the Kadels are plausibly liable for Star Lounge's violation of § 605.

## C. Damages, Attorneys' Fees, and Costs.

The next step is to assess the plaintiff's damages. Under 47 U.S.C. § 605(e)(3)(C)(i)(II), a party may recover either actual damages or statutory damages of between $1,000 and $10,000. Where the court finds that the violation was willful and done for the purpose of commercial advantage or private financial gain, the court may exercise its discretion to increase the damages award, whether actual or

statutory, by up to $100,000. *Id.* § 605(e)(3)(C)(ii). Section 605 also provides for an award of costs and reasonable attorneys' fees. *Id.* § 605(e)(3)(B)(iii). The Court finds that Joe Hand is entitled to statutory damages, a small award of enhanced damages, and its costs and attorneys' fees.

Start with the choice between actual or statutory damages. Joe Hand argues that statutory damages are appropriate because its actual damages are too difficult to calculate with reasonable certainty. (Doc. 18-1, #52). The Court agrees. Generally, statutory damages "are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d. 874, 882 (S.D. Ohio 2007) (discussing statutory damages in the trademark and copyright contexts); *see also Joe Hand Promotions, Inc. v. Sahabi Convenience Store, Inc.*, No. 24-cv-11160, 2024 WL 4564539, at *3 (E.D. Mich. Oct. 24, 2024). Here, it would be exceedingly difficult to calculate the value of Star Lounge's ill-gotten gains and Joe Hand's lost profits, reputational injury, and loss of goodwill attributable to defendants' Communications Act violation. (Doc. 18-1, #63). So the Court finds that statutory damages are appropriate. 47 U.S.C. § 605(e)(3)(C)(i)(II).

Having established that Joe Hand is entitled to statutory damages, the Court must decide how much to award within the statutory range. *Id.* Joe Hand requests the maximum: $10,000. (Doc. 18-3, #71). When deciding the appropriate amount of statutory damages, the Court should "take into account the proportionality between the loss suffered by the plaintiff and the profit gained by the defendant." *J & J Sports*

*Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008). Other relevant considerations include the number of patrons present when the violation occurred, the establishment's seating capacity, the rate the plaintiff typically charges for broadcast access, and whether the defendant charged a cover or took other measures to boost their profits. *Joe Hand Promotions, Inc. v. Granada Lounge, Inc.*, No. 11-13062, 2012 WL 447272, at *2 (E.D. Mich. Feb. 13, 2012).

The facts of this case support a modest statutory damages award. Star Lounge must have had a slow night when it showed the Fight. Joe Hand's investigator counted only three patrons out of a maximum capacity of one hundred. (Doc. 18-4, #72). And the defendants did not charge a cover or take any other discrete measures designed to boost profits. (*Id.*). If defendants had done everything above board, they would have paid Joe Hand $1,095 for the right to show the Fight. (Doc. 18-3, #71). Putting all that together: Joe Hand suffered a modest loss (certainly less than the $10,000 it requests) while defendants eked out a meager benefit from their violation. *Ribeiro*, 562 F. Supp. 2d at 501. Given these facts, the Court finds that statutory damages of $1,095 are appropriate to compensate Joe Hand for the licensing fee it lost out on because of defendants' violation. 47 U.S.C. § 605(e)(3)(C)(i)(II).

Next, the Court must decide whether to award enhanced damages. 47 U.S.C. § 605(e)(3)(C)(ii). Joe Hand requests a $20,000 award. (Doc. 18, #48). Enhanced damages are appropriate only when the defendant acts willfully and for the purpose of commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii). When a defendant acts in such a way, an increased penalty is appropriate to deter future

violations. *Joe Hand Promotions, Inc. v Pickett*, 5:15-cv-478, 2016 WL 3668162, at *5 (N.D. Ohio July 11, 2016). Some courts hold that intercepting and unscrambling a television signal is per se willful because it requires an overt act. *Id.* at *4 (collecting cases). Courts also consider whether the defendant is a repeat violator, *Sahabi*, 2024 WL 4564539, at *5, whether the defendant charged a cover, advertised the event, increased food and drink prices, *Fisher*, 2013 WL 4482405, at *4, and the number of patrons present relative to the defendant-business's capacity and the number of screens upon which the defendant displayed the infringing content, *J & J Sports Prods., Inc. v. Zambrano*, No. 4:14-cv-960, 2015 WL 3682588, at *5 (N.D. Ohio June 12, 2015).

Defendants' violation of § 605 was willful and self-serving, so enhanced damages are appropriate. Defendants unlawfully intercepted the Fight and then displayed it to customers. (Doc. 1, #4–5, 7). That they captured and decoded an encrypted broadcast suggests defendants knew they were not authorized to access the contents—let alone show it to the public—and chose to do so anyway. *Pickett*, 2016 WL 3668162, at *5. In other words, defendants acted willfully. *Id.* Defendants also advertised the Fight on social media to bring in more customers, which demonstrates a profit-driven motive for their violation. (Doc. 18-5, #74); *Fisher*, 2013 WL 4482405, at *4.

While enhanced damages are appropriate, the $20,000 Joe Hand requests is excessive. (Doc. 18, #48). Defendants are not repeat violators, they advertised the Fight only twice—once on their own Facebook page and once in the local

neighborhood group, (Doc. 18-5, #74; Doc. 18-7, #76)—did not charge a cover fee, and displayed the Fight on only three screens to three patrons out of a potential capacity of one hundred, (Doc. 18-4, #72–73). The Court is, of course, aware of the need to deter future violations, but a single violation "is not so serious as to warrant putting the [Lounge] out of business." *Ribeiro*, 562 F. Supp. 2d at 501 (quoting *Garden City Boxing Club, Inc. v. Polanco*, No. 5-cv-3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006)). To that end, the Court finds that awarding enhanced damages of $2,190, twice the statutory damage award, would adequately deter defendants and others from committing future violations and reflect the relatively small scale of this particular violation. 47 U.S.C. § 605(e)(3)(C)(ii); *G & G Closed Circuit Events, LLC v. Grant*, No. 1:24-cv-131, 2025 WL 27376, at *5 (S.D. Ohio Jan. 3, 2025) (observing that district courts in the Sixth Circuit typically apply a two-to-three times multiplier when awarding enhanced damages).

That leaves attorneys' fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff's counsel submitted an affidavit stating that he spent 4.5 hours working on this case. (Doc. 18-8, #77). At his standard rate of $300 per hour, that totals $1,350. (*Id.*). He also requests $402 in costs. (*Id.*). The Court finds these amounts reasonable. Plaintiff is awarded $1,350 in attorneys' fees and $402 in costs. 47 U.S.C. § 605(e)(3)(B)(iii).

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Motion for Default Judgment (Doc. 18) and **DIRECTS** the Clerk to enter judgment against Defendants Star Lounge & Bar, LLC, Ramish Kadel, and Arjun Kadel for $5,037.

**SO ORDERED.**

September 16, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**